RENDERED:  OCTOBER 8, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1250-MR

MITCHCO INTERNATIONAL, INC.                 APPELLANT

                  APPEAL FROM FRANKLIN CIRCUIT COURT
v.                HONORABLE PHILLIP J. SHEPHERD, JUDGE
                  ACTION NO. 19-CI-01175

COMMONWEALTH OF KENTUCKY,
THROUGH ITS SECRETARY OF EDUCATION
AND WORKFORCE DEVELOPMENT
AND ITS SECRETARY OF FINANCE
AND ADMINISTRATION; FAY AUTRY,
INTERVENOR; AND SOUTHERN
FOODSERVICE MANAGEMENT, INC.           APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Mitchco International, Inc. appeals from an order

which dismissed its complaint against the Commonwealth of Kentucky and

Southern Foodservice Management, Inc. We believe the trial court erred in dismissing the entire complaint against Appellees. Some causes of action are still viable, while some were properly dismissed; therefore, we affirm in part, reverse in part, and remand.[1]

## FACTS AND PROCEDURAL HISTORY

In 1999, the Kentucky Department for the Blind[2] (hereinafter referred to as the Commonwealth) was awarded a contract by the United States Army to provide food services for Fort Knox. The Commonwealth contracted with Appellant to provide these food related services. The contract entered into between the Commonwealth and Appellant stated that it would be effective for as long as the Commonwealth had the contract to provide food services to Fort Knox.

On November 1, 2019, the Commonwealth informed Appellant that it was not going to renew their contract when the Fort Knox contract between the Army and the Commonwealth was next renewed. The Commonwealth also informed Appellant that Southern Foodservice Management, Inc. would be taking over Appellant's duties. On November 13, 2019, Appellant filed a Kentucky Model Procurement Code (KMPC)[3] protest arguing that any change in food service

---

[1] Fay Autry was a party to this action, but Appellant brought no claims against her; therefore, while she is named in the caption of this Opinion, she is not relevant to our Opinion.

[2] In 2019 this department was merged into the Workforce Development Cabinet.

[3] Kentucky Revised Statutes (KRS) Chapter 45A, *et seq.*

subcontractor needed to go through the proper KMPC procedure.[4]  The next day, the Finance and Administration Cabinet responded to the protest and stated that this type of contract was not subject to the KMPC.

On November 18, 2019, Appellant filed a complaint seeking a restraining order, temporary and permanent injunction, declaration of rights, and money damages for breach of contract.  A temporary restraining order was entered soon thereafter prohibiting the Commonwealth from replacing Appellant with Southern Foodservice, or any other provider, until the court could consider all the claims against the Commonwealth.  On February 4, 2020, Southern Foodservice intervened in the action.

On February 7, 2020, Appellant filed a motion for partial summary judgment.  Appellant argued that the Commonwealth breached their contract by trying to replace it as the food services subcontractor.  Appellant argued that the duration clause in the contract required the Commonwealth to keep using it as the food services provider.  On February 24, 2020, Appellant filed another motion for partial summary judgment in which it argued any attempt to replace it as the food services provider would need to follow the KMPC requirements.

_____

[4] Certain contracts with the Commonwealth require the following of KMPC procedures, such as competitive bidding from vendors when awarding contracts.  *See* KRS 45A.075.

On February 27, 2020, Appellant filed an amended complaint which alleged the following causes of action against Southern Foodservice: tortious interference with contractual relations, tortious interference with prospective business advantage, theft of trade secrets, unfair business practices, and civil conspiracy. The Commonwealth and Southern Foodservice filed motions to dismiss. A hearing was held on all the outstanding motions.

On March 31, 2020, the trial court entered an order which denied Appellees' motions and granted one of Appellant's motions. Relevant to our Opinion, the trial court held that the KMPC applied to these types of contracts. The court held that the Commonwealth's replacing of Appellant with Southern Foodservice violated the KMPC because the Commonwealth did not follow the KMPC procedures. The court also held that there were still disputed issues of material fact concerning the breach of contract issues; however, the court went on to state that "those issues are moot (or, not ripe) because of the failure of the Commonwealth to follow the requirements of the KMPC[.]" The court went on to say that the contract at issue, the 1999 contract between Appellant and the Commonwealth, was originally subject to the KMPC, did not follow the KMPC procedures at the time, and must be rebid in accordance with the KMPC. The court granted a permanent injunction against the Commonwealth and stated that the food services subcontract needed to be rebid pursuant to the KMPC. It also

-4-

maintained the status quo, with Appellant providing food related services until the contract could be rebid.

On June 2, 2020, Appellant filed a supplemental complaint which raised additional allegations, but did not add new causes of action. Appellees filed new motions to dismiss soon thereafter. On September 3, 2020, the trial court entered an order granting Appellees' motions to dismiss. Appellees argued that Appellant's claims should be dismissed because the original 1999 contract should have been awarded pursuant to the KMPC; therefore, it must be rebid and Appellant has no rights to any future involvement with the Fort Knox contract.

The trial court agreed with Appellees' argument. The trial court's order first reiterated that the KMPC applied to the original contract between the Commonwealth and Appellant, and, as a result, Appellant's arguments regarding the 1999 contract were moot by virtue of the holding that the contract must be rebid. The trial court, citing *Electric and Water Plant Board of City of Frankfort, Kentucky v. South Central Bell Telephone Company*, 805 S.W.2d 141, 143 (Ky. App. 1990), also held that the 1999 contract was a contract in perpetuity because it was open-ended with no definite ending. The court concluded that this type of contract could be terminated at will by either party. Finally, the court, citing 200 KAR[5] 5:312 Section 3, held that the KMPC allows the Commonwealth to

---

[5] Kentucky Administrative Regulations.

-5-

terminate contracts for convenience if the termination would be in the Commonwealth's best interests. This appeal followed.

## ANALYSIS

Appellees moved to dismiss Appellant's complaint pursuant to Kentucky Rules of Civil Procedure (CR) 12.02(f), which allows a court to dismiss a case for the failure to state a claim upon which relief can be granted. When reviewing a CR 12.02 motion to dismiss, "the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." *Gall v. Scroggy*, 725 S.W.2d 867, 869 (Ky. App. 1987) (citation omitted). "Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo.*" *Littleton v. Plybon*, 395 S.W.3d 505, 507 (Ky. App. 2012) (citations omitted).

The trial court dismissed the causes of action against Appellees based on three different theories. First, the trial court held that the 1999 contract should have been entered into pursuant to the KMPC, but because it had not, the contract needed to be rebid. Second, the court held that the contract was an impermissible contract in perpetuity and could be terminated by either party at any time. Third, the court held that KMPC regulations allowed the Commonwealth to terminate

contracts when such termination was in the best interest of the Commonwealth. None of the parties have appealed the holding of the trial court that the 1999 contract should have been entered into pursuant to the KMPC. We believe this issue is determinative of this case and we need not address the other two alternative trial court dispositions.

The trial court held that the subcontract for the providing of food services to Fort Knox needed to rebid so it could adhere to the KMPC requirements. The court believed that since the contract must be rebid, there was no breach of the 1999 contract when the Commonwealth sought to replace Appellant; therefore, the causes of action raised by Appellant were all moot and should be dismissed. We disagree. We do believe that the trial court properly dismissed some causes of action, but erred in dismissing the entire complaint. The best way to address this issue is to go through each cause of action raised by Appellant against the Appellees.

We will begin with the causes of action raised against the Commonwealth. The first cause of action was Appellant's seeking to enforce the contract. In other words, Appellant wanted to continue being the food services subcontractor pursuant to the duration clause in the 1999 contract. The trial court held that the KMPC applied to the food service contract and this holding was not appealed. This issue was properly dismissed because the KMPC applied to this

subcontract and must be rebid pursuant to those rules; therefore, the court did not err in canceling the prospective application of the 1999 contract. Since the contract cannot continue in its current state, Appellant has no rights to the continued enforcement of the contract's duration clause.

The second cause of action was for breach of contract. Appellant claimed that the Commonwealth breached the contract by trying to replace them as the food service subcontractor. Appellant also claimed the Commonwealth breached the contract by allowing Southern Foodservice staff to observe Appellant on site, which disturbed Appellant's employees and made their jobs more difficult. Appellant also claimed the Commonwealth also ordered the Army not to communicate directly with Appellant, which caused delays in payment and other job-related issues. Finally, Appellant claimed the Commonwealth breached the confidentiality clause of the contract by giving insider information to Southern Foodservice and providing Southern Foodservice with Appellant's proprietary information.

We believe the parts of this cause of action that deal with the future performance of the contract were properly dismissed, but the parts that concern past or present breaches are still viable. In other words, the breach of the duration clause should have been dismissed because the contract must be rebid in accordance with the mandates of the KMPC. On the other hand, the

Commonwealth's alleged breaches of the contract that occurred while Appellant was fulfilling its obligations under the contract should still be allowed to go forward. Such instances of still viable causes of action would be: the Commonwealth's forcing Appellant to allow Southern Foodservice staff to observe their operations, the Commonwealth's interfering with communications with the Army, and the Commonwealth's breaching the confidentiality clause of the contract. These breaches have nothing to do with the continued or future performance of the contract at issue, only the past performance of the contract.

The third cause of action was that the Commonwealth breached the KMPC and that any future change of subcontractor must be done pursuant to the terms of the KMPC. There is nothing further required of this cause of action. The trial court agreed with Appellant and held that the food service contract was subject to the KMPC.

The fourth cause of action was that the Commonwealth violated Appellant's due process rights. Appellant claimed it had a property right in the continued application and enforcement of the contract, but the Commonwealth tried to take this property away without due process. This argument was correctly dismissed because, as previously stated, the contract must be rebid as it did not adhere to the requirements of the KMPC. As the contract must be rebid, Appellant has no property rights in the contract going forward.

The fifth cause of action was that the Commonwealth was trying to take away property without just compensation. Again, this issue deals with the Commonwealth trying to terminate the contract. As the contract must be rebid, this cause of action was properly dismissed.

The sixth and final cause of action against the Commonwealth was a request for a declaratory judgment that the Commonwealth cannot utilize any other food service contractor. This cause of action was also properly dismissed because the court held that the contract must be rebid in accordance with the KMPC.

We will now move on to the causes of action raised against Southern Foodservice. The first cause of action raised by Appellant was tortious interference with contractual obligations. Appellant argued that Southern Foodservice enticed the Commonwealth to breach the contract by replacing them as the food services subcontractor. Appellant also claimed that Southern Foodservice interfered with their contract by having Southern Foodservice employees in the Fort Knox facilities interfering with Appellant's job performance. Appellant also claimed Southern Foodservice interfered with their contract by being in possession of Appellant's proprietary information and trade secrets. Finally, Appellant claimed Southern Foodservice interfered with the contract by interfering with Appellant's ability to communicate with the Army.

Similar to our holding in regard to the Commonwealth causes of action, anything related to the future of the contract was properly dismissed because the contract must be rebid according to the KMPC statutes; however, any causes of action dealing with Appellant's past or present performance of the contract are still viable. We believe the viable tortious interference with a contract issues would be those dealing with Southern Foodservice employees being on location at Fort Knox and interfering with Appellant's job duties, any interference related to communications with the Army, and any interference related to Southern Foodservice's being in possession of Appellant's proprietary information or trade secrets.

The second cause of action was tortious interference with prospective business advantage. This cause of action was properly dismissed because it concerns the future application of the contract, but, as held by the trial court, the contract must be rebid.

The third cause of action was theft of trade secrets. Appellant alleged this cause of action occurred when Southern Foodservice employees were on site at Fort Knox and were able to observe Appellant's employees. Appellant also claimed Southern Foodservice's employees were able to view confidential documents while on site. Finally, Appellant claimed there was a theft of trade secrets when Southern Foodservice received confidential information about

Appellant from the Commonwealth.  As this cause of action was not related to the future performance of the Fort Knox food services contract, it is still viable.

The fourth cause of action was unfair business practices.  Appellant argued that Southern Foodservice was engaged in unfair business practices when it gave special rebates and other perks to the Commonwealth in order to be awarded the new contract.  Appellant claimed that Southern Foodservice's actions were an attempt to damage competition between potential vendors and eliminate Appellant's ability to take part in any future food service contract.

This cause of action derives from KRS 365.020, KRS 365.050, and KRS 365.060.  KRS 365.020 states:

> (1) No person doing business in this state and engaged in the production, manufacture, distribution or sale of any commodity or product, or service or output of a service trade, of general use or consumption, or the product or service of any public utility, with the intent to destroy the competition of any regular established dealer in such commodity, product or service, or to prevent the competition of any person who in good faith intends and attempts to become such dealer, shall discriminate between different sections, communities or cities, or portions thereof or locations therein, in this state, by selling or furnishing such commodity, product or service at a lower rate in one section, community or city, or any portion thereof or location therein, than in another, after making allowance for difference, if any, in the grade or quality, and in the actual cost of transportation from the point of production, if a raw product or commodity, or from the point of manufacture, if a manufactured product or commodity.  The inhibition against locality

-12-

> discrimination shall embrace any scheme of special rebates, collateral contracts or any device of any nature whereby such discrimination is, in substance or fact, effected in violation of the spirit and intent of this section.

KRS 365.050 states:

> The secret payment or allowance of rebates, refunds, commissions or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor, and where such payment or allowance tends to destroy competition, is an unfair trade practice, and no person shall resort to such trade practice.

KRS 365.060 states that "[a]ny contract, express or implied, made in violation of any of the provisions of KRS 365.020 to 365.050 is an illegal contract and no recovery shall be had thereon."

While this cause of action has some aspects dealing with the continuation of the 1999 contract, it also concerns any future bidding on the contract that may occur. Any part of this cause of action dealing with Appellant's attempt to continue the 1999 contract was properly dismissed, but insofar as this relates to any future bidding on the food services contract, that part of the claim is still viable.

Appellant's fifth and final cause of action against Southern Foodservice was for civil conspiracy. Appellant alleged that Southern Foodservice and the Commonwealth entered into a conspiracy to deprive it of the ability to

fulfill the Fort Knox food services requirements and to deprive it of the future applicability and enforcement of the 1999 agreement. In essence, this cause of action reiterates all the previous causes of action brought against the Commonwealth and Southern Foodservice, but does so in a way that alleges these Appellees acted together to breach the contract and interfere with Appellant's business. Like the other causes of action in this case, any part of this cause of action that concerns the future applicability of the 1999 contract was properly dismissed, but any part of it that concerns past and present acts is still viable.

## CONCLUSION

The trial court dismissed all causes of action against Appellees in this case. That was in error. Only those claims that cover the future of the food services contract at issue were properly dismissed because that contract must be rebid for violating the KMPC. Any claims that deal with the parties' past and present behaviors are still viable because they are independent of whatever the future holds for this contract. We also reiterate that we make no judgment regarding whether these causes of action can be proved or whether damages can be shown. We state that they are only still viable from a CR 12.02 motion to dismiss standpoint. Based on the foregoing, we affirm in part, reverse in part, and remand.


ALL CONCUR.


-14-

BRIEFS FOR APPELLANT:

Theodore S. Shouse
Louisville, Kentucky

Alan Grayson
Orlando, Florida

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY:

Zachary A. Horn
Frankfort, Kentucky

BRIEF FOR APPELLEE
SOUTHERN FOODSERVICE
MANAGEMENT, INC.:

Stewart C. Burch
Edwin A. Logan
Frankfort, Kentucky

Robert G. Jones
W. Brad English
Huntsville, Alabama